NOT FOR PUBLICATION

<table>
<tr><td>UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br><br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>In Re:<br><br>    BlockFi, Inc.<br><br>                              Debtors</td><td>Case No. 22-19361 (MBK)<br><br>Hearing Date: April 25, 2024<br><br>Chapter 11<br><br>Judge: Michael B. Kaplan</td></tr>
</table>

| | |
|---|---|
| **Rachel Ehrlich Albanese, Esq.**<br>DLA PIPER LLP (US)<br>1251 Avenue of the Americas<br>New York, New York 10020 | **Kenneth J. Aulet, Esq.**<br>BROWN RUDNICK LLP<br>Seven Times Square<br>New York, New York 10036 |
| **Stephen C. Matthews, Esq.**<br>DLA PIPER LLP (US)<br>51 John F. Kennedy Parkway, Suite 120<br>Short Hills, New Jersey 07078 | **Tristan Axelrod, Esq.**<br>BROWN RUDNICK LLP<br>One Financial Center<br>Boston, MA 02111 |
| **Stuart M. Brown, Esq.**<br>DLA PIPER LLP (US)<br>1201 North Market Street, Suite 1200<br>Wilmington, Delaware 19801 | **Stephen D. Palley, Esq.,**<br>**Daniel J. Healy, Esq.,**<br>**John G. Doyle, Esq.,**<br>BROWN RUDNICK LLP<br>601 Thirteenth Street NW Suite 600<br>Washington, D.C. 20005 |
| **Stacey E. Rufe, Esq.**<br>WERNER AHARI MANGEL LLP<br>2112 Pennsylvania Ave. NW<br>Suite 200<br>Washington, DC 20037 | *Counsel for Plaintiff BlockFi, Inc. by and through the Plan Administrator* |
| *Attorneys for Movants Arch Insurance Company, Berkley Insurance Company, Berkshire Hathaway Specialty Insurance Company, U.S. Specialty Insurance Company, and XL Specialty Insurance Company* | **Daniel M. Stolz, Esq.**<br>**Donald W. Clarke, Esq.**<br>GENOVA BURNS LLC<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>*Local Counsel for Counsel for Plaintiff BlockFi, Inc. by and through the Plan Administrator* |

**MEMORANDUM DECISION**

This matter comes before the Court on two motions: a Motion for an Order Remanding to State Court (ECF No. 2181) filed by Wind-Down Debtors; and a Motion to Enforce the Plan and Confirmation Order (ECF No. 2221) filed by Arch Insurance Company, Berkley Insurance Company, Berkshire Hathaway Specialty Insurance Company, U.S. Specialty Insurance Company, and XL Specialty Insurance Company (collectively, the "Insurers"). Both motions revolve around directors and officers liability insurance policies ("D&O Policies") and an Amended Complaint filed by the Wind-Down Debtors against the Insurers in state court. The Court has fully considered the parties' submissions, as well as the arguments raised during the hearing on April 25, 2024. For reasons discussed below, the Court GRANTS the Wind-Down Debtors' Motion for Remand and GRANTS IN PART the Insurers' Motion to Enforce.

**I.    Jurisdiction**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This Court retained jurisdiction under ¶ 146 of the Order confirming Debtor's plan of reorganization (the "Confirmation Order," ECF No. 1660), and exercises its post-confirmation jurisdiction over both motions inasmuch as they involve the interpretation and enforcement of the Third Amended Joint Chapter 11 Plan (the "Plan", ECF No. 1309) and Confirmation Order. *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 166 (3d Cir. 2004) (explaining that bankruptcy courts have post-confirmation jurisdiction where the dispute has a close nexus to the bankruptcy plan or proceeding). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## II.   Background and Procedural History

The Court limits its recitation of the factual and procedural history of this case to information pertinent to the matters presently being decided. Prior to filing for bankruptcy, Debtor BlockFi Inc. ("BlockFi") contracted with the Insurers, who issued an insurance policy covering BlockFi's directors and officers (the "Policy") for the time period from November 18, 2022 to November 18, 2023. It is undisputed that BlockFi paid a $22.5 million premium for potentially $30 million in coverage under the Policy. On November 28, 2022, BlockFi filed for bankruptcy. This Court entered the Confirmation Order on October 3, 2023. After the Plan became effective on October 24, 2023, the BlockFi Debtors became the Wind-Down Debtors as contemplated by the Plan.

It is undisputed that the Policy was assumed under the Plan and that the Plan gave certain protections to the Insurers. However, the Plan also preserved the Wind-Down Debtors' rights to pursue causes of action against the Insurers. On January 3, 2024, the Wind-Down Debtors commenced one such cause of action in New Jersey State Court (the "State Court Action"). The Amended Complaint in the State Court Action asserts six claims, each of which is discussed in detail in a subsequent section of this Opinion. The Insurers filed a Notice of Removal (ECF No. 2130) removing the State Court Action to this Court.[1] Wind-Down Debtors then filed the instant Motion seeking an Order remanding the State Court Action to New Jersey State Court. Shortly

---

[1] The Court notes that the Insurers' Notice of Removal was filed as a "document" on the docket in the main bankruptcy case. However, when a case is removed under 28 U.S.C. § 1452(a)—as here—an adversary proceeding is required. *See* FED. R. BANKR. P. 7001(10). After the Insurers' Notice of Removal was filed, the Clerk's Office issued a "Correction Notice in Electronic Filing" indicating the error and informing the Insurers that an adversary proceeding must be opened. To date, no such adversary proceeding has been initiated. However, given that the instant Opinion and corresponding Order will remand the removed action to state court, the Court will not require an adversary proceeding to be filed only to then close it—a futile exercise that would require time, effort, and expense by the parties and the Court. *See Law v. Siegel*, 571 U.S. 415, 426, 134 S. Ct. 1188, 1197, 188 L. Ed. 2d 146 (2014) (clarifying the holding in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007) and stating "a bankruptcy court may be authorized to dispense with futile procedural niceties in order to reach more expeditiously an end result required by the Code").

thereafter, the Insurers filed a Motion to Enforce, alleging that the claims in the State Court Action violate the terms of the Plan and Confirmation Order.

## III. Discussion

The crux of the Wind-Down Debtors' remand argument is that the claims in the Amended Complaint arise under state law and will be more effectively and appropriately resolved by the state court. The Insurers, however, assert that the Plan provisions protecting the Policy expressly prohibit the Wind-Down Debtors from bringing the claims in the first place. In response, the Wind-Down Debtors rely on the provision of the Plan that preserves their rights to pursue causes of action. The instant dispute, thus, compels this Court to reconcile certain provisions of the confirmed Plan prior to engaging in a discussion on abstention and the appropriateness of remand. Specifically, the Court must balance the provisions that provide protective treatment to D&O Policies (including the Policy at issue here) against the provisions that preserve the Wind-Down Debtors' rights to commence and pursue suits to challenge prepetition actions (such as the purchase of the Policy).

### A. Plan Provisions

Resolution of these issues turns on an interpretation of Article V, Section F of the Plan. This section states, in relevant part:

> **Notwithstanding anything to the contrary** in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (**including, without limitation, any other provision that purports to be preemptory or supervening**, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) each of the Insurance Contracts (including, without limitation, any D&O Liability Insurance Policies) which identify one or more of the Debtors as first named insured or counterparty thereto shall be assumed, in their entirety by the applicable Wind-Down Debtor, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date,

pursuant to sections 105 and 365 of the Bankruptcy Code, (b) on and after the Effective Date, the Wind-Down Debtors shall become and remain liable in full for all of their and the Debtors' obligations under the Insurance Contracts regardless of when any such obligations arise, and all Insurance Contracts shall revest in the applicable Wind-Down Debtors, unaltered; (c) all Insurance Contracts and all legal, equitable or contractual rights, obligations, and defenses of the Insurers, the Debtors (or, after the Effective Date, the Wind-Down Debtors), or any other individual or entity, as applicable, under any Insurance Contracts, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect, and Insurers shall not be required to file or serve any objection to a proposed Cure Claim or a request, application, claim, Proof of Claim or motion for payment or allowance of any Administrative Claim, and Insurers shall not be subject to any bar date or similar deadline governing Cure Claims, Proofs of Claim or Administrative Claims; (d) the Debtors or the Wind-Down Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy"), and any current and former directors, officers, managers, and employees of the Debtors who served in such capacity at any time before or after the Effective Date[.]

. . .

For the avoidance of doubt, the D&O Insurance Providers shall not be Released Parties or Releasing Parties under the Plan. **Notwithstanding the foregoing and notwithstanding any provision of this Plan to the contrary**, neither assumption of any Insurance Contracts nor any outstanding obligation of the Debtors or Wind-Down Debtors or Insurers shall, or shall be deemed or construed to, in any way preclude the Wind-Down Debtors from commencing, prosecuting, introducing any evidence or making any argument in connection with, reducing to judgment, or collecting upon any Causes of Action against any Insurers in respect of any Vested Causes of Action, including but not limited to any Avoidance Action; *provided, however*, that nothing in this Article V.F of the Plan shall alter or prejudice any or all of the Insurers' rights and defenses with respect to any such claims, arguments, evidence, and/or causes of action, and all such rights and defenses of the Insurers are fully and expressly reserved and preserved.

*Plan —Insurance Policies and Surety Bonds,* Article V(F), ECF No. 1660 (emphasis added).

As the above excerpt highlights, Article V(F) of the Plan contains dueling "notwithstanding" language, and both the Insurers and the Wind-Down Debtors assert that their "notwithstanding" language controls. While recognizing that this particular provision could have been more artfully worded, the Court concludes that the Insurers' "notwithstanding" language

takes priority—meaning that the Wind-Down Debtors' obligation *not* to impair the Policy, limits the ability to bring certain causes of action.

In reaching this conclusion, the Court first relies on the plain language of the Plan. Both clauses indicate that they control, notwithstanding anything to the contrary. However, only the provision protecting the Policy contains more explicit and specific language, and cites to various documents and provisions, "including, without limitation, **any other provision that purports to be preemptory or supervening** . . . ." Under New Jersey principles of contract interpretation,[2] general provisions yield to more specific provisions. *See, e.g., C.L. v. Div. of Med. Assistance & Health Servs.*, 473 N.J. Super. 591, 601, 284 A.3d 860, 866 (App. Div. 2022) (holding that explicit and specific provisions of the contract control over general provisions); *see also Atl. City Assocs. LLC v. Carter & Burgess Consultants, Inc.*, 2008 WL 4951354, at *4 n.3 (D.N.J. Nov. 13, 2008) (applying New Jersey law and stating that "[w]here two clauses in a contract are in conflict, the more specific provision controls over the more general provision") (citations omitted). Given that the Policy protection clause explicitly states that it supersedes "any other provision that purports to be preemptory or supervening," this Court is compelled to conclude that it controls over the Wind-Down Debtors' competing "notwithstanding" provision.

The Court acknowledges that the provision preserving the Wind-Down Debtors' rights begins with the introductory phrase, "[n]otwithstanding the foregoing," and comes *after* the provision protecting the Policy. Arguably, this could be read as an intention to give priority effect to the Wind-Down Debtors' "notwithstanding" language, as it relates to the "notwithstanding" language that precedes it (i.e., the Insurers' "notwithstanding" language). However—in reading

---

[2] Although the Court was unable to locate a copy of the Policy on the docket, the Wind-Down Debtors assert that the Policy dictates that it should be governed and construed under New Jersey law. *See, e.g., Amended Complaint* ¶ 26, ECF No. 2130-1. No party challenged this assertion.

the document as a whole and in a common sense manner, as this Court must under New Jersey law, *see Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 103, 965 A.2d 1165, 1169 (2009)—the Court determines that the phrase "[n]otwithstanding the foregoing" as it appears in the preservation of rights provision likely refers to the language that *immediately* precedes it, which sets forth the limited circumstances in which the automatic stay or injunctions under the Plan are lifted to permit litigation involving insurance policies. *See Plan —Insurance Policies and Surety Bonds,* Article V(F), ECF No. 1660 ("the automatic stay of the Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan . . . shall be deemed lifted without further order of this Court, **solely to permit** [four specific types of claims under applicable non-bankruptcy law]") (emphasis added). Thus, the inclusion of the phrase "[n]otwithstanding the foregoing" in the Wind-Down Debtors' preservation of rights provision does negate the priority of the Policy protection language.

The Insurers also point to ¶ 88 of the Plan, which echoes the sentiment memorialized in the Policy protection provision. Paragraph 88 states that "[t]he Debtors or the Wind-Down Debtors, as applicable, shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date[.]" *Plan* ¶88, ECF No. 1660. When interpreting these Plan provisions, the Court is mindful that it should not do so in a manner that renders one of its terms meaningless. *See C.L. v. Div. of Med. Assistance & Health Servs.*, 473 N.J. Super. at 599 (citing *Porreca v. City of Millville*, 419 N.J. Super. 212, 233, 16 A.3d 1057 (App. Div. 2011)). If the Wind-Down Debtors' have limitless rights to commence litigation that rescinds, terminates, or impairs the Policy, then the Policy Protection provision and ¶ 88 serve no purpose. Accordingly, the Court concludes that the more appropriate interpretation

of the Plan is that the Wind-Down Debtors may not impair or terminate the Policy. If the Wind-Down Debtors possess an unchecked ability to seek rescission or terminate, then the directors and officers would not have received consideration for the bargain that was struck (namely, their financial contributions to fund the Plan).[3] Simply put, they are entitled to the coverage for which they negotiated. Nevertheless, the Court cannot interpret the Plan in such a way that renders meaningless the provision of the Plan giving the Wind-Down Debtors rights to sue. If it were to do so, then the Court would be nullifying a critical facet of the hard-fought settlement recovery secured by the UCC. Therefore, the Court determines that the Wind-Down Debtors retain their rights to commence causes of action against the Insurers, which rights are tempered by Wind-Down Debtors' obligation to *not* impair or terminate the Policy. This interpretation reconciles the competing Plan provisions and—in the Court's view—offers a fair and common sense reading of the Plan as a whole. With this framework in mind, the Court looks to the allegations of the Amended Complaint.

> B. The Amended Complaint

The first count of the Amended Complaint requests a declaratory judgment declaring that the Policy is void *ab initio* and that the Wind-Down Debtors are entitled to a full return of the premium. This amounts to an attempt to terminate the Policy, an action that is barred by the Plan and Confirmation Order. Accordingly, the Insurers' Motion to Enforce will be granted as it relates to Count I of the Amended Complaint. The Wind-Down Debtors are directed to strike this claim before proceeding in the State Court Action.

---

[3] Given the Court's role in assisting the Debtor and Official Committee of Unsecured Creditors ("UCC") to reach a global settlement, the Court is fully cognizant that the ability to retain the benefits of the Policy and, yet, at the same time pursue the insurers under an array of legal theories were critical terms of the global settlement for the UCC and Debtor, respectfully. The parties drafted the Plan language adroitly to secure their potentially competing provisions and left reconciliation and enforcement to the Court for another day. That day has arrived.

The second count of the Amended Complaint asserts a claim under state law seeking avoidance and recovery of fraudulent transfers made for less than reasonably equivalent value. This claim is not violative of the Policy protection provisions of the Plan. Similarly, the third cause of action in the Amended Complaint asserts a claim under state law seeking avoidance and recovery of fraudulent transfers made without receiving reasonably equivalent value and with actual fraudulent intent. These are not acts seeking to reduce or impair the Policy. Instead, the Court views these claims as actions for recovery of estate assets that will not lead to termination or modification of the Policy. Indeed, there can be a monetary recovery for the difference between the consideration paid and value received. The Wind-Down Debtors are explicitly permitted under the Plan and Confirmation Order to bring these types of actions; therefore, the Insurers' Motion to Enforce will be denied as it relates to Counts II and III of the Amended Complaint.

The fourth cause of action alleges breach of contract. Specifically, the Wind-Down Debtors contend they are entitled to a refund of the premium but that, despite their demand for same, the Insurers have failed to remit payment—constituting a breach of the Insurers' duties under the Policy. In support of this claim, the Wind-Down Debtors point to ¶ 3 of the Policy, which provides that the Policy shall be void, and premiums shall be refunded, in the event the "Insureds" fail to file for bankruptcy protection by December 9, 2022. The entity BlockFi filed its bankruptcy petition prior to that date. However, the Wind-Down Debtors assert that BlockFi was not an "Insured" as that term is defined in the Policy; therefore, they argue that—under the terms of the contract—the Policy is void ab initio, and they are entitled to a return of the premium. As an initial matter, the Court makes no findings as to the merits of this argument. The Court examines this claim only to determine whether it is violative of the Plan and Confirmation Order and concludes that it is not.

Although this cause of action seeks essentially the same relief as Count I—avoidance of the Policy and return of the premium—Count IV approaches it from a different angle. This claim does not seek to reduce or summarily terminate the Policy; rather, it seeks to enforce the terms of the parties' contract. It is undisputed that the Policy—a contract—was assumed under the Plan. This contract establishes the parties' respective rights and obligations. Assumption of the contract did not alter those rights and obligations. The Wind-Down Debtors contend that the Policy contains a provision indicating the circumstances under which they could seek to void the agreement and request a full refund of the premium. Thus, the Wind-Down Debtors are exercising their rights under the contract, and the fourth cause of action seeks to enforce the Policy's terms. This type of claim is not prohibited by the Policy protection provision and is permitted under the Plan and Confirmation Order. Accordingly, the Insurers' Motion to Enforce is denied with respect to Count IV of the Amended Complaint.

The fifth cause of action asserts a claim for recission. This cause of action seeks relief that would have the effect of modifying, impairing, or terminating the Policy and is explicitly prohibited by the Plan and Confirmation Order. The Court clarifies that this is claim is not an effort to enforce the Policy that results in reduced coverage—something that would be permitted under the terms of the Plan. Rather, this is an action to impair the Policy—something that is inconsistent with, and barred by, the Policy protection provision. The Insurers' Motion to Enforce will be granted as it relates to Count V of the Amended Complaint and the Wind-Down Debtors are directed to strike this Count before proceeding in the State Court Action.

Finally, the sixth cause of action asserts an unjust enrichment claim under state law, alleging the Insurers provided illusory coverage. In this claim, the Wind-Down Debtors contend that "BlockFi received no benefit or an unreasonably small benefit" in exchange for the expensive

premium, and that the coverage provided by the Policy is so "unreasonably narrow" that the Insurers' "retention of the benefit of the premium they received is unjust." *Amended Complaint* ¶¶ 119, 121, 123. This claim does not seek to impair or terminate the Policy. Instead, the Wind-Down Debtors are seeking to recover what they allege to be unjust enrichment in the form of a return of some or all of the premium. This type of action is expressly permitted in the preservation of rights' provision and does not otherwise violate the Plan and Confirmation Order. The Insurers' Motion to Enforce is denied with respect to Count VI of the Amended Complaint.

In sum, the Court determines that Counts I and V of the Amended Complaint violate the Plan and Confirmation Order. Only Counts II, III, IV, and VI of the Amended Complaint may proceed. Having resolved the Insurers' Motion to Enforce, the Court now addresses the Wind-Down Debtors' Motion to Remand in the context of the surviving claims.

### C. Motion to Remand

In their Notice of Removal, the Insurers assert that this Court has jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1334(b). That provision states that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In their Motion to Remand, however, the Wind-Down Debtors point to § 1334(c)(2) and argue that—because the Amended Complaint presents only "non-core" issues—this Court *must* abstain and remand the matter to the state court. Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, **related to a case under title 11 but not arising under title 11 or arising in a case under title 11**, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).

> Indeed, abstention is mandatory if the following requirements are met:
>
> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006), as amended (Mar. 17, 2006). The party advocating for mandatory abstention bears the burden of proving that it is warranted. *See Stoe*, 436 F.3d at 219 n.5. The Insurers argue that the Wind-Down Debtors have failed to satisfy this burden. The Court disagrees and concludes that § 1334(c)(2) applies and abstention is mandatory.

### 1. The State Court Action is Based on State Law

The causes of action in the Amended Complaint are undeniably premised on state law; therefore, the first requirement for mandatory abstention is satisfied. The Insurers' only argument to the contrary rests on the fact that the Amended Complaint cites § 544(b) and § 550 of the Bankruptcy Code. However, as the Wind-Down Debtors point out, this does not render the claims inherently federal. Rather, these Code provisions merely give the Wind-Down Debtors standing to pursue certain causes of action and recover funds. *See, e.g. Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 712 (D. Del. 2006) (observing that the debtor invoked § 544 of the Code to provide it with standing to pursue state causes of action to avoid transfers grounded in state law). It is well-established that state courts and bankruptcy courts share concurrent jurisdiction over § 544 claims. *See, e.g.*, *In re Rosenblum*, 545 B.R. 846, 856 (Bankr. E.D. Pa. 2016) (collecting cases). And a state law claim does not become a federal claim merely because § 544 is invoked. *See, e.g.*, *Motorworld, Inc. v. Benkendorf*, 2017 WL 2334257, at *3 (N.J.

Super. Ct. App. Div. May 30, 2017) (concluding that bankruptcy trustee possessed the right to commence a state court action under § 544). Here, the remaining causes of action of the Amended Complaint allege fraudulent transfers under N.J. STAT. ANN. § 25:2-27 and § 25:2-25, breach of contract, and unjust enrichment due to illusory coverage. The Court concludes that the Amended Complaint is rooted in state law.

In support of federal jurisdiction, the Insurers cite a case from the Southern District of New York, and argue that "there is a presumption in favor of the exercise of federal jurisdiction and against abstention." *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004) (citing *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)). As an initial matter, the case cited is not binding on this Court. Moreover, the quoted language appears in the context of a discussion on *permissive abstention*, during which the district court considers "whether to abstain or remand on equitable grounds" under 28 U.S.C. § 1452(b). *Rahl*, 316 B.R. at 135. It is not persuasive. Accordingly, the Court finds that the Wind-Down Debtors have satisfied the first requirement for mandatory abstention.

### 2. Core or Non-Core Jurisdiction

The second requirement for mandatory abstention turns on whether the matters in question are "core" issues or "non-core" issues.

> Bankruptcy court jurisdiction potentially extends to four types of title 11 matters, pending referral from the district court: (1) cases under title 11, (2) proceeding arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11. Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings; whereas proceedings "related to" a case under title 11 are referred to as "non-core" proceedings.

*In re Resorts Int'l, Inc.*, 372 F.3d 154, 162 (3d Cir. 2004) (internal quotations and citations omitted).

A proceeding "arise[s] under" the Bankruptcy Code when the Bankruptcy Code creates the cause of action or provides the substantive right being invoked. *Stoe*, 436 F.3d at 217. A proceeding "arise[s] in" a case when it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *Id*. at 216 (quoting Unit*ed States Trustee v. Gryphon at the Stone Mansion, Inc*., 166 F.3d 552, 556 (3d Cir. 1999) and explaining that a proceeding arises in a bankruptcy case if it has "no existence outside of the bankruptcy"). Finally, "a claim falls within the bankruptcy court's 'related to' jurisdiction if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 405 (3d Cir. 2009) (internal quotations and citations omitted); *see also In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009).

Here, the claims in the Amened Complaint are plainly non-core proceedings. They do not invoke a substantive right under the Bankruptcy Code and, because they are bottomed on state law, they can exist outside the context of the bankruptcy case. At best, the claims are "related to" the bankruptcy case because—if successful—they could result in recovery to the estate.

Because the causes of action are merely "related to" the bankruptcy case and do not "arise under" or "arise in" the Code, the second requirement is satisfied.

### 3. Federal Court's Jurisdiction Over the Claims in the Amended Complaint

The next requirement for mandatory abstention asks whether, absent the bankruptcy case, a federal court would have jurisdiction over the claims asserted. Since the record does not establish complete diversity among the parties, the Court must conclude that, but for the bankruptcy case,

there would be no federal jurisdiction.[4]  Accordingly, the third requirement for mandatory abstention is satisfied.

### 4. An Action 'Is Commenced' in a State Forum of Appropriate Jurisdiction

The Insurers acknowledge that the Wind-Down Debtors commenced the State Court Action in New Jersey State Court. Thus, the fourth requirement is satisfied.

### 5. Timely Adjudication

The fifth and final requirement for mandatory abstention is whether the action can be "timely adjudicated" in a state forum of appropriate jurisdiction. In their Opposition, the Insurers argue that the Wind-Down Debtors have "failed to show that the New Jersey Superior Court can timely adjudicate their action." *Insurers' Opp'n* ¶ 28, ECF No. 2239. The Insurers cite backlog and the complexity of the causes of action, which—they assert—will require "interpretations of the Plan and Confirmation Order[.]" *Id.* at ¶ 29. By way of the Motion to Enforce, this Court has reconciled the competing Plan provisions. Therefore, the issues that remain for the state court involve solely resolution of state law claims and complexity is not an issue for purposes of evaluating timely adjudication.

Moreover, "[w]hen assessing 'timely adjudication' . . . "[t]he question is not whether the action would be *more quickly* adjudicated in the bankruptcy court than in state court, but rather, whether the action can be *timely adjudicated* in the state court.' " *In re G-I Holdings, Inc.*, 580 B.R. at 421 (quoting *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008) (emphasis in original) (quotations and citations omitted)). The cases cited by the Insurers advise that "in considering a state court's ability to timely adjudicate a particular case, a district court must

---

[4] The Wind-Down Debtors assert that "there is no diversity jurisdiction." *Motion to Remand* ¶ 40, ECF No. 2181-1. The Insurers do not dispute this assertion in their Opposition (ECF No. 2239).

compare 'the backlog of the state court's calendar (if any) relative to the federal court's calendar[.]'" *Prudential Ins. Co. of Am. v. RBS Fin. Prod., Inc.*, 2013 WL 5913654, at *6 (D.N.J. Oct. 30, 2013) (quoting *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011)). In another case cited by the Insurers, the district court noted that the party opposing abstention painted only a "generalized picture" of the time difference between the district court and New Jersey State Courts. *Calascibetta v. J.H. Cohn LLP*, 2011 WL 2224179, at *2 (D.N.J. June 6, 2011). Here, the Insurers' broad allegation of "backlog" is a similarly generalized allegation and—like the district court in *Calascibetta*—this Court does not see "any overwhelming or substantial difference between" the expediency of this Court and New Jersey State courts.

Given the lack of complexity, the state court's familiarity with state law issues asserted in the Amended Complaint, and the absence of a credible and significant time differential in adjudication, this Court concludes that the fifth and final factor for mandatory abstention is satisfied.

Having concluded that mandatory abstention is appropriate, the Court need not consider permissive abstention under 28 U.S.C. § 1334(c)(1). Nevertheless, the Court determines that permissive abstention would be warranted in any event. Under the doctrine of permissive abstention, a court may "in the interest of justice, or in the interest of comity with State courts or respect for State law, [abstain] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1); *see also In re Essar Steel Minnesota, LLC*, 47 F.4th 193, 202 n.8 (3d Cir. 2022). "[B]ankruptcy courts 'have broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *In re G-I Holdings, Inc.*, 580 B.R. 388, 422 (Bankr. D.N.J. 2018) (quoting *In re Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996)).

The Third Circuit has not set forth a formal test for application of the permissive abstention doctrine. Rather, courts in this circuit consider a variety of factors. *See, e.g. In re Rothman*, 2024 WL 695753, at *13 (Bankr. D.N.J. Feb. 20, 2024) (collecting cases and applying a twelve-factor test); *In re MicroBilt Corp.*, 484 B.R. 56, 66 (Bankr. D.N.J. 2012) (citing *In re Strano*, 248 B.R. 493, 504 (Bankr. D.N.J. 2000) and applying a sixteen-factor test); *Jazz Photo Corp. ex rel. Moore v. Dreier LLP*, 2005 WL 3542468, at *8 (D.N.J. Dec. 23, 2005) (applying a seven-factor test). Ultimately, courts agree that the difference between these tests is not substantial, and every factor need not be considered. *See In re Rothman*, 2024 WL 695753, at *13; *In re G-I Holdings, Inc.*, 580 B.R. at 422. Rather, the inquiry is fact-specific and depends on the circumstances of the case. For purposes of this Motion, the Court will utilize the twelve-factor test, which seems to be the most commonly adopted test.

> The twelve-part test includes: (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

French, 619 B.R. 285, 297 (Bankr. D.N.J. 2020).

Applying these factors to the facts of the instant case, this Court summarily concludes that permissive abstention is warranted. First, abstention does not impact the efficient administration of the bankruptcy estate. Additionally, for reasons previously discussed, the Court finds that state law issues predominate the Amended Complaint and—having resolved interpretation of the Plan

and Confirmation Order—the remaining claims in the Amended Complaint do not relate to the main bankruptcy case. Therefore, the state law claims, which are not "core" matters, cannot be severed from the Amended Complaint. Further, the Court notes that the Wind-Down Debtors have demanded a jury trial in the State Court Action. All of these factors weigh in favor of abstention. In their Opposition, the Insurers assert that the state court has not yet invested significant time considering the State Court Action, which—the Insurers contend is an "overarching" consideration in the decision to abstain. *Insurers' Opp'n* ¶ 32, ECF No. 2239 (quoting *Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs.*, 181 B.R. 781, 793 (D.N.J. 1995)). However, more recent case law regarding permissive abstention establishes that no one factor is determinative or more persuasive than any other; instead, the factors should be applied flexibly and "their relevance and importance will vary with the particular circumstances of each case[.]" *In re G-I Holdings, Inc.*, 580 B.R. 388, 422 (Bankr. D.N.J. 2018) (internal quotations and citations omitted); *see also In re Rothman*, 2024 WL 695753, at *13. This Court has applied "the appropriate and necessary factors that are relevant and central to the issue of abstention in this case[,]" *Shalom Torah Centers v. Philadelphia Indem. Ins. Companies*, 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011), and determines that permissive abstention is appropriate.

## IV. Conclusion

For the aforementioned reasons, the Court grants in part and denies in part the Insurers' Motion to Enforce; and grants the Wind-Down Debtors' Motion to Remand. The Court will enter an appropriate Order.

*[signature]*

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: May 13, 2024